UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
COALCO CORPORATION and              )
PELLETCO COMPANY                    )
                                    )
         Plaintiffs                 )
                                    )   CIVIL ACTION
         .v.                        )   NO. 09-10195-WGY
                                    )
HEADWATERS INC.,                    )
f/k/a COVOL TECHNOLOGIES, INC.      )
                                    )
         Defendant.                 )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    February 4, 2010

## I. INTRODUCTION

Coalco Corporation ("Coalco") and Pelletco Company
("Pelletco")(collectively "the Companies") apply for Summary
Judgment on both Counts of their Complaint, seeking a declaration
that Headwaters Inc. ("Headwaters") had breached a certain
contract, and a further declaration that no monies are due and
owing to Headwaters from or by Pelletco. Headwaters brings a
Cross-Motion for Partial Summary Judgment against the Companies.

### A. Undisputed Facts

Headwaters, formerly known as Covol, was engaged in the synthetic coal fuel ("synfuel") industry in the 1990s, and developed, patented and later licensed associated technology. Headwaters' Memorandum in Support of its Motion, Statement of Undisputed Facts, ¶ 1 [Document No. 28]; Response to Statement of Undisputed Facts, ¶ 1 [Document No. 32].  The synfuel industry developed as a result of tax credits granted for the use of synfuel under the Internal Revenue Code. Headwaters' technology qualified for such credits.  Statement of Facts, ¶¶ 2,3,4; Response to Facts, ¶¶ 2,3,4.

Headwaters sought partners to capitalize on the technology and associated tax credits, and under an agreement with Coalco ("Exclusive Financial Advisor Agreement" or "EFAA") signed September 16, 1996, Coalco was required to, and did, compile and furnish to Headwaters a list of prospective partners for investment in the industry.  Statement of Facts, ¶¶ 5,6,7,8; Response to Facts, ¶¶ 5,6,7,8.  Coalco introduced Headwaters to Arthur J. Gallagher & Company ("AJG") and Tampa Electric Company ("TECO"), who were the licensees for the facilities licensed by Headwaters.  Counterclaim and Third Party Complaint, ¶¶ 14,15. EFAA provided for fees to be paid to Coalco for such introductions based on the royalties payable to Headwaters for the licensure of its technology. Id. ¶¶ 15. AJG operated the 'Pawnee Facilities', TECO operated the Algoma facilty and Coaltech operated the US# 1 facility.  Statement of Facts, ¶ 19; Response to Facts, ¶ 19.

2

Pelletco and Headwaters entered into an agreement ("License and Binder Purchase Agreement" or "License Agreement")on August 5, 1997, licensing Headwaters' synfuel technology to Pelletco in exchange for royalty payments and an agreement that Pelletco would purchase its 'binder', a chemical reagent important in synfuel production, from Headwaters.  Statement of Facts, ¶¶ 12,13,14; Response to Facts, ¶¶ 12,13,14.  Under the Licence Agreement and its subsequent amendment, it was agreed that any amount owed by Pelletco to Headwaters could be offset against any amount owed by Headwaters to Coalco.  Statement of Facts, ¶ 16; Response to Facts, ¶ 16.

Coalco and Headwaters amended EFAA on November 9, 1999 ("the 1999 Agreement"), pertaining specifically to those plants operated by AJG and TECO, and a third operator to whom Coalco had introduced Headwaters, Coaltech No. 1 L.P. ("Coaltech").  Statement of Facts, ¶¶ 17,18,19; Response to Facts, ¶¶ 17,18,19.  Section 2.c of the 1999 Agreement established the basis for the payment of fees by Headwaters to Coalco relating to the Pawnee and US#1 facilities.  Statement of Facts, ¶ 20; Response to Facts. ¶ 20.

The Algoma facility, operated by TECO, was not included in the original 1999 Agreement.  Bolan Aff., Ex. F [Document No. 25].  As to it, Headwaters proposed, and Coalco accepted, by Letter Agreement of December 29, 1999, a flat rate of 15% of royalites received by Headwaters from the Algoma facility.  Id. At the time of this letter agreement, there were two different

3

rates of royalty payable to Headwaters: $2.50/ton where the
Headwaters binder was used, and $1.25/ton where the Headwaters
binder was not used.  Id. In 2002, Headwaters and TECO agreed
that the royalties due for use of Headwaters binder would drop to
the level of payments when the binder was not being used, i.e.
$1.25/ton.  Companies' Memorandum in Support, Pg. 7,8.  TECO
subsequently and exclusively used Headwaters' binder in the
operation of the Algoma facility.  Id.

    In or around October 2000, Headwaters brought a complaint
against AJG, alleging that AJG had failed to pay royalties due to
Headwaters. Statement of Facts, ¶¶ 22,23; Response to Facts, ¶¶
22,23. AJG disputed Headwaters' claim, arguing it was no longer
using Headwaters' technology.  Statement of Facts, ¶¶ 22,23;
Response to Facts, ¶¶ 22,23. As a result of this dispute, AJG did
not pay royalties to Headwaters during the period 2000-2004.
Statement of Facts, ¶ 30. Headwaters and Coalco agreed in May
2001 that no royalty payments for the Pawnee Facilities would be
made to Coalco prior to the outcome of litigation between
Headwaters and AJG. Id., ¶ 33.

    After a trial, a jury returned a verdict in Headwaters'
favor for unpaid royalties in the sum of $142,718,220, plus pre-
judgment interest, for a total of $175,023,789.  Statement of
Facts, ¶¶ 24,25,26; Response to Facts, ¶¶ 24,25,26.  In post-
trial negotiations with AJG, Headwaters agreed to a settlement of
$120,000,000, to be paid in two installments, $50,000,000 in May

4

2005, and $70,000,000, plus interest, in January 2006.  Statement
of Facts, ¶¶ 27,28,29; Response to Facts, ¶¶ 27,28,29.

As a result of this settlement, Coalco and Headwaters
entered into negotiations to agree on the royalties payable to
Coalco for the period January 1, 2000 to December 31, 2004, and
agreed that the appropriate royalty amount was $12,574,000.
Statement of Facts, ¶¶ 30-36; Response to Facts, ¶¶ 30-36; Deane
Aff. ¶¶ 1-12, Ex. 1-10.  Coalco asserted the amount originally
due from Headwaters was $12,615,000, and subsequently 'split the
difference' with Headwaters, agreeing to a final royalty fee for
the period of $12,574,000. Deane Aff. Ex. 5.  While the parties
appear to be in dispute as to whether there was a transfer of
such funds, Coalco admits that on January 26, 2006 it received,
and subsequently deposited, a check in the amount of $670,225.46.
Statement of Facts, ¶¶ 37,38; Response to Facts, ¶¶ 37,38; Deane
Aff. ¶ 15,16.  The Court understands that this is the net amount
due and owing to Coalco when offsetting all royalties due to
Headwaters from Pelletco.  Deane Aff. Ex. 10, Pg. 5.

The parties' negotiations about the amount of royalties due
from future payments from AJG continued.  Deane Aff., ¶¶ 17-15,
Ex. 13-18.

The tax credits attached to the production of synfuel were
phased out in 2006 and 2007, due to rising oil prices and to
coincide with the conclusion of the scheme at the end of 2007.
Statement of Facts, ¶¶ 39,40; Response to Facts, ¶¶ 39,40.  Due
to these phaseouts, the royalty payments Headwaters received from

5

it's licensees were lower, and it lowered the fees it paid to
Coalco proportionately.   Statement of Facts, ¶¶ 41,42; Response
to Facts, ¶¶ 41,42.

### B.   Federal Jurisdiction

The Court has jurisdiction to resolve the parties' Motions
pursuant to 28 U.S.C. §§ 1332 and 1441.

## II.   ANALYSIS

The 1999 Agreement is governed by the laws of the State of
New York. Complaint, Ex. 1, Pg. 12.

### A.   Interpretation of a Contract is Matter of Law for the Court

"Intention plainly expressed in clear, unambiguous terms
raises no question of fact and Summary Judgment is appropriate".
Curtin v. Glazier, 94 A.D.2d 434, 438 (1983)(citing Long Is. R.R.
Co. v. Northville Inds. Corp., 41 NY2d 455, 461; Teal v. Place,
85 A.D.2d 788).

### B.   Interpretation of Section 2.c of the 1999 Agreement to Determine Payments Due on the Licensing of the Pawnee and US#1 Facilities

Section 2.c of the 1999 Agreement, in relevant part, states:

. . . with respect to all sales of qualified synthetic
fuel sold from the US#1 facility of any of the Pawnee
Four Facilities after July 1, 1999 and before January 1,
2008...Covol shall pay to Coalco a commission fee as
follows pursuant to subparagraph 2.f below: Two and

6

10/100 Dollars ($2.10) per ton of qualified synthetic fuel sold from the US#1 facility and 75/100 Dollars ($0.75) per ton of qualified synthetic fuel sold from the Pawnee Four Facilities, which rates of payment shall be adjusted annually based on the Consumer Price Index commencing on January 1, 2000.

The per ton commission . . . shall be payable regardless of the amounts of any royalty or other payments that Covol actually may receive...and regardless of whether the current ownership of the [facilities] remains in place...In the event that prior to the Termination Date, the amount(s) payable to Covol based on the output of any of the [facilities] is modified, the commission fee payable to Coalco hereunder with respect to such facility shall be modified in the same proportion as the modified amount(s) bear to the amount(s) payable in accordance with the...license in effect for such facility as of July 1999. The determination of the percentage modification shall take into account any other consideration received by Covol with respect to such facility or the owner or operator thereof...If Covol receives one or more lumps sum payments, including cancellation of debt, for a modification in or cancellation of the royalty, Coalco's fee hereunder will be increased by 10.53% (8/76) of such lump sum payment(s) or cancellation of debt...

Complaint, Ex. 1, Pg. 5,6.

The 1999 Agreement contains plain and unambiguous language governing the calculation of fees payable to Coalco. It sets the fees to be paid for the Pawnee Four Facilities at $2.10/ton, but makes allowance for modification in proportion to royalties receivable by Headwaters from its licensees. The 1999 Agreement allows for a lump sum payment to Coalco only when Headwaters receives such a lump sum in consideration of some modification of the royalty payments due to Headwaters.

The post-trial settlement with AJG represents such a modification, revising the jury verdict establishing the actual royalties due to Headwaters down from $175,023,789 to $120,000,000 for the period in question.

7

As stated *supra*, Coalco and Headwaters subsequently agreed that the sum due and owing to Coalco for fees calculated for the period was some $12,574,000. This figure was arrived at after negotiations between the parties, and Headwaters paid the net amount due to the Companies on January 26, 2006. The assertion that Coalco now makes, that it is due greater payments for this period, does not square with its previous claim that it was due $12,615,000, which it subsequently reduced to $12,574,000 by agreement.  Indeed, Gordon Deane, in his email to Headwaters, said "the new number would be $12,574,000 as the amount due to Coalco by Headwaters".  Deane Aff., Ex 5.  Attempting to modify its claim after agreement, and asserting its maximum claim of $12,615,000, is now disingenuous, as is the attempt to assert a 'partial payment' defense in depositing the check from Headwaters.  Deane Aff., ¶ 16.

Coalco's claim to 10.53% of the $72,000,000 payment to Headwaters in 2006 is baseless, as both it and the 2005 payment were encompassed within the $12,574,000 settlement agreement, as argued by Headwaters.  Id.

Headwaters need not rely on a defence of novation or accord and satisfaction, as agreement on the issue is admitted in the Companies' submissions.  Statement of Facts, ¶¶ 30-36; Response to Facts, ¶¶ 30-36, Deane Aff. Ex 5.

Thereafter, no other lump sum has been paid to Headwaters "for a modification in or cancellation of [a] royalty" as required by the 1999 Agreement. Nowhere does the Agreement

8

require Coalco's consent or consultation as to any modification
to the royalties payable to Headwaters from it's licensees.  The
1999 Agreement expressly allows for the proportional modification
of fees payable to Coalco on the basis of reduced royalties
payable by Headwaters' licensees.

    With this in mind, it is impossible for Coalco to support
its argument that Headwaters breached the 1999 Agreement by
proportionately reducing the fees paid to Coalco in line with the
reduced royalties for the later period .

    Coalco cannot successfully assert that the reductions in
royalty payments were applied retroactively.  The 1999 Agreement
specifically requires the reduction of fees payable to Coalco in
line with concurrent reductions in royalties payable to
Headwaters.  The lump sum payments for the period 2000-2004 were,
as discussed *supra*, agreed between the parties in their
settlement agreement.  These payments do not consiitutue
retroactive roylaties.  Any claim Coalco may have to the
royalties from that period was subsumed in the settlement
agreement and satisfied when the check from Headwaters was
deposited.

    Further, the same language in the 1999 Agreement applies
with equal force to the Companies' claims that Headwaters
breached the 1999 Agreement by proportionately reducing the fees
payable from the US#1 Facility during the "phase-out" period in
2006 and 2007.  Id. Pg. 6,7.  Once again, the 1999 Agreement
expressly provides for the reduction in fees in line with a

9

reduction payable under the terms of the licenses granted by
Headwaters.

## C. Interpretation of the Letter Agreement to Determine Payments due from the Algoma Facility, and the 2002 Agreement between TECO and Headwaters

Section 2.d of the 1999 Agreement governs the fees to be
paid from a facility subsequently operated by a "Prospective
Investor", such as TECO.  Complaint, Ex. 2, Pg. 6,7,8.  The
Letter Agreement of December 29, 1999, sets out different terms
for the payment of fees, and changes the calculation method.
Bolan Aff., Ex. F.  It does not, however, change, or seek to
change, the general terms of Section 2.d.  Id. Section 2.d., in
all material terms, mirrors exactly the provisions of Section
2.c, above.  Complaint, Ex. 2, Pg. 6,7,8.

In particular, Section 2.d states, in relevant part:

The determination of the percentage modification shall take
into account any other consideration received by Covol with
respect to such Facility or the owner and/or operator thereof...

This language clearly states that in modifying the fees
payable to Coalco, any consideration received by Covol/Headwaters
may be considered.  In this instance, prior to the negotiation of
the reduction in royalty payments for using Headwaters' binder,
TECO was paying $1.25/ton for synfuel produced at the facility,
and that was the extent of Headwaters' revenue from the plant.
Companies' Memorandum in Support, Pg. 7.  In 2002, however,
Headwaters received additional consideration from TECO, in the
form of payments for, and profits from the sale of, its

10

proprietary binder to TECO, which sales had only recommenced after the royalties had been reduced, and Coalco's fee reduced proportionately. Id. This does, in consideration of the language in the 1999 Agreement, appear to breach the Agreement.

The Court cannot, however grant Summary Judgment for Coalco in this regard, as the language merely says such "other consideration" must be "take[n] into account"; it does not say that Coalco is entitled to 15% of that "other consideration". Id. It is obvious also from Headwaters' submissions that such consideration was never "taken into account". See Headwaters' Memorandum in Opposition, Pg. 16,17,18. All that remains to be determined is the proportion, if any or all, of the consideration received by Headwaters that should have been "take[n] into account"; such an issue falls to the Jury to determine at trial.

## III. CONCLUSION

In light of the foregoing, as to Count I, Summary Judgment is allowed in part and denied in part and further proceedings shall be governed by this analysis.

Summary Judgment is not appropriate in any respect as to Count II with respect to the rights, duties and obligations of Pelletco since the fees due Coalco from Headwaters are uncertain.

**SO ORDERED.**

*William G. Young*

**William G. Young**
**District Judge**

11